**William W. Ramsey, Appellant, v. Jesse W. Carr et al., Appellees.**

**Gen. No. 5574.**

PARTNERSHIP—*when not established.* Held, in this case, that the partnership claimed was not established.

Appeal from the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed March 13, 1912.

BUELL & ABBEY and DUNCAN, DOYLE & O'CONNOR, for appellant.

R. A. GREEN and A. E. BUTTERS, for appellees.

MR. JUSTICE WILLIS delivered the opinion of the court.

The original bill of complaint was filed in this cause in the Circuit Court of La Salle county on April 6, 1910, by William W. Ramsey as complainant against Jesse W. Carr and Thomas H. Bellrose as defendants. The bill alleged that in July, 1909, the complainant entered into a verbal contract with Carr, who resided in Sheridan in La Salle county, whereby Carr agreed

to procure certain riparian rights on the Fox River, to be used in the creation of water power, and Ramsey agreed to assist in the financing and developing of said water power project; that in pursuance of said agreement, Carr had procured certain property rights and had hired Bellrose to secure others, which had been done; that, on November 22, 1909, upon representation by Carr that he either had procured or could procure all the necessary rights for the creation of such a water power as was contemplated, a contract in writing was entered into by Ramsey and Carr, whereby Carr agreed to transfer all said rights to Ramsey and accept for the same twenty per cent. of the stock of a corporation to be organized to develop water power and to reimburse for all expenses attendant upon the securing of said rights, and Ramsey agreed to use his best endeavors in financing and developing said properties and water rights. The bill further alleged that Carr procured such riparian rights in the name of Bellrose who was the employe of Carr, for the purpose of defrauding Ramsey; that Carr and Bellrose, without regard to the contract between Ramsey and Carr were attempting to sell all their rights to unknown parties, and that, unless restrained, they would make a transfer of such rights to prevent Ramsey from obtaining a decree for the specific performance of said contract. The bill alleged a partnership agreement between Ramsey and Carr in this enterprise of establishing a water power and prayed that the defendants be decreed to convey their rights to Ramsey and that they be enjoined from conveying such rights except in accord with said contract with Carr. A general demurrer to this bill was sustained and thereupon complainant below took leave to file an amended bill, which was done on July 20, 1910.

The amended bill re-stated many of the facts as alleged in the original bill, alleged a partnership between Ramsey and Carr, evidenced by the written

agreement or contract of November 22, 1909, and prayed that it might be decreed that all the rights acquired by the defendants, (who were the same as those to the original bill,) were acquired for the benefit of said alleged co-partnership. A demurrer to the amended bill was overruled and the defendants thereto filed separate answers. One Robert J. Rowe, filed an intervening petition, asking to be made a party defendant and, upon this being granted, he also filed an answer. Each of the three defendants denied any partnership existing between Ramsey and Carr; and Bellrose denied that either Carr or Rowe had any interest in the rights which had been secured in his name. The cause was referred to a master to take and report proofs, and upon this being done the court after a hearing entered a decree dismissing the amended bill for want of equity, and complainant below appeals therefrom, alleging that the material questions in this case are: 1. Was there a partnership agreement between Ramsey and Carr; and 2. Were the rights which were procured by Rowe and Bellrose obtained by them as agents of such partnership.

A great amount of evidence, both oral and documentary was presented in this case, and after a careful examination thereof, both in the abstract and the record itself, the facts appear proven as are hereinafter set forth. The defendant Jesse W. Carr, who was a physician in Sheridan in La Salle county, and his wife had met Mrs. Ramsey, the wife of appellant, and had invited Mr. and Mrs. Ramsey to visit them on the Fourth of July, 1909. No previous acquaintance existed between Ramsey and Carr. Ramsey was a representative of the Ambursen Hydraulic Construction Company, which owned and constructed a patent dam. For the purpose of introducing and selling said dam, the company was accustomed, through its representatives, to assist water power owners to finance water power projects, provided the contract for con-

struction was given the Ambursen Company. Ramsey was in partnership with one John H. Martin in representing the Ambursen Company and received a commission from the Ambursen Company on any deals which might be successfully carried out with water power owners. During the visit of the Ramseys with the Carrs Ramsey accompanied Dr. Carr in his calls upon his patients, and, in the course of their drive along the Fox River, Ramsey explained his connection with the Ambursen Company and stated that the Fox River appeared to him to be a good field for the operation of his company. Ramsey stated that the Ambursen Company would cause a corporation to be organized which would undertake the construction of water power on the Fox River and would pay the expenses of any parties who secured water rights and engineering data and would pay them for their work by giving them twenty per cent. of the stock of such company. That afternoon Carr called in his neighbor Robert J. Rowe, and the proposition was explained to him. Rowe was county surveyor, and it was agreed that he should assist Carr in procuring water rights and should also prepare such engineering data as would be needed. Ramsey left Sheridan the next day and did not return for a month or more and, in the meantime, no mention had been made by him to Rowe that he had entered into any partnership arrangement with Carr. Thereafter Carr obtained some water rights in his name and endeavored to hire one Thomas H. Bellrose to secure other rights for him. Bellrose refused to be hired but secured quite a number of such rights in his own name. These he obtained for himself alone and not under any arrangement with any other person. He bore the expense of securing them out of his own pocket and was not recompensed therefor in any way by Carr.

Carr and Rowe were not very successful in obtaining water rights, and Ramsey and Martin seem to have

come to the conclusion that they would have to rely upon Bellrose to do the work for them, for they had numerous conferences with Bellrose in their offices in Chicago with reference to this matter. Ramsey admitted on the witness stand that he knew that Bellrose was financially interested in the water power proposition and was securing rights in his own name, and yet Ramsey does not claim ever to have mentioned to Bellrose the matter of his alleged partnership arrangement with Carr.

In the fall of 1909 Ramsey prepared the document which was afterwards executed by Carr and Ramsey on November 22, 1909, and sent it to Carr for execution. Carr did not execute it then, but went to Chicago with Bellrose a few days later and met Ramsey, at which time Carr told Ramsey he could not sign such a contract, as he (Carr) did not own all the water power rights. Carr was then told by Ramsey that that made no difference; that he only desired the execution of the contract so that he could have something to show "his people," that they might know he had authority to talk with them in regard to this water power proposition. Carr thereupon signed the contract. Bellrose was requested to sign as a witness, but refused, as he was not made a party to it. He, however, agreed that if Ramsey could interest his company in the proposition, he (Bellrose) would turn over his riparian rights to Ramsey along with those of Carr and Rowe and all three would participate in the consideration to be received.

After the execution of this contract Ramsey repeatedly told appellees that the Ambursen Company had agreed to finance the project and that the negotiations could be closed as soon as a Mr. Church, an engineer in the employ of the company, could inspect the location of the proposed water power and make a report thereon. Various dates were fixed by Ramsey for the inspection by Church, but Church never ap-

peared on the scene. At one time the Ambursen Company endeavored to interest another company in the project, but failed. The contract between Ramsey and Carr expired by its terms on March 22, 1910, and thereafter Carr notified Ramsey that his rights thereunder had terminated. In the meantime Martin had severed his connection with Ramsey and had endeavored to interest an Iowa party in the water power project, but without avail. When Ramsey received notice of the termination of the contract from Carr, he filed his original bill herein.

The material question in this case is whether or not a partnership existed between Ramsey and Carr, and we are unable to find sufficient evidence in the record to sustain Ramsey's contention that such a relation did exist. The contract does not in express words establish a partnership relation between the two parties, and, even if it did, in our judgment it could not be enforced, as it lacks mutuality. While the so-called contract requires Carr to do and perform various things, it did not impose upon Ramsey any obligation to do anything. It is true, the contract contained the following language: "4th. The said William W. Ramsey for himself and his associates does hereby agree to comply with all the conditions herein within four months from date hereof," but the conditions of the contract do not mention Ramsey by name or by implication nor require him to take any steps towards the carrying out of the contract. But further, if it could be said that the reasonable intendment of the language of the contract required Ramsey to make the financial arrangements for a water power corporation, still such an interpretation of the contract could not inure to the benefit of Ramsey, for he had entirely failed to make such financial arrangements and the time within which he was to perform such services had expired.

But there is still another reason why a court of

equity cannot look with favor upon Ramsey's conten-
tion that a relation of partnership existed between
himself and Carr by reason of the so-called contract.
At the time of Ramsey's first visit to the Fox River,
and during the progress of all the negotiations and
nearly up to the time of the expiration of the contract,
Ramsey was in partnership with Martin in represent-
ing the Ambursen Company in the sale of its patented
dam. As stated before, the usual means employed by
Ramsey and Martin for selling such dam was the in-
ducing of property owners to form water power com-
panies and incidentally to purchase the patented dam
of the Ambursen Company, their employers. The ef-
fect of Ramsey's partnership with Martin and his em-
ployment by the Ambursen Company would be to make
him desirous of selling such dam or taking a contract
for its erection on terms most favorable to the Ambur-
sen Company and least favorable to the property own-
ers or to the water power company formed by them.
Ramsey and Martin were paid by commission by the
Ambursen Company and, of course, the amount of
their commission depended upon their obtaining terms
as favorable as possible to the company. This posi-
tion is entirely inconsistent with and antagonistic to
Ramsey's position as a partner of Carr in the forma-
tion of a water power company, where his interests
and those of his partner should lead him to obtain the
most favorable terms for the water power company,
which terms would naturally be less favorable to the
Ambursen Company. Equity cannot aid Ramsey when
he assumes such positions, naturally hostile to each
other. We conclude that Ramsey has not established
any such equitable rights as he set up in his amended
bill of complaint.

We find no reversible error in the record and the
decree is therefore affirmed.

*Affirmed.*